Johnson, J.
delivered the opinion of the Court.
The questions which arise out of the facts in evidence, and -the grounds of the present motion, are: 1st, Whether the defendant was intitled to distrain on William Reeves for holding over after the expiration of his lease. 2d, If he was, whether William Reeves was liable for double rent for the whole time for which he held over, or only from the end of one quarter after notice to quit. 3d, Whether, supposing the property distrained to belong to the plaintiff, and that known to the defendant, he might lawfully distrain it for rent due from William Reeves.
1st. Connected with the first question, some explanations have been given at the bar, which are necessary to the perfect understanding bf the report of-the presiding Judge. According to these it would seem, that Samuel Waller, now deceased, had agreed with William Reeves to sell him the fee simple of the leased premises, and gave him a bond to make titles, and took his note for the payment of the purchase money. Waller died, and the defendant administered on his estate, and William Reeves’ note being unpaid, he brought á suit, and obtained judgment for the amount. He afterwards agreed with William Reeves to *500 take the land in satisfaction of the judgment, and obtained from jilui a rejease 0f his interest in the fee simple of the land, and thereupon leased the same to the said William Reeves for the term, arid upon the stipulation contained in the lease given in evKjeilcej [,y which a rent of $20, is reserved, for a term ending the 1st January, 1827. To this lease a condition is annexed, that if William Reeves shall pay to defendant two-thirds of the amount of the aforesaid judgment on or before the expiration of the term, the lease should be void.
The counsel for the motion have attempted to maintain out of these circumstances ; first, that this condition was performed, as the land was surrendered in satisfaction of the judgment; and secondly, that this being a condition on the nonperformance of which, alone, the rent was to fall due, the defendant could not proceed by distress. ’ The bare recital of the circumstances sufficiently shews, that there is no foundation for the first of these positions; the release of his interest in the land preceded the defendant’s lease to William Reeves, and could not operate as an extinguishment.of the lease. Nor can i believe the counsel serious in his second position. If it were altogether uncertain what the rent reserved was, then clearly distress would not lie; but here it is fixed at $20, for the time the lease had to run ; and if it were possible to construe the condition annexed to it so as to oblige the lessor to accept something else in lieu of it, yet unless that other was given, or offered to be given to him, the debt still remained as ascertained bv the lease. If one undertake to pay money, or do some other act within a specified time, and he fail to perform it within the time, the debt becomes absolute.
To ibis question the case of Smith v. Colson, 10 Johns. 91, is directly applicable. There, in trespass for taking plaintiff’s goods, the defendant just ified that they were taken as a distress for rent in arrear. The proof was, that plaintiff had hired a house of defendant at the rent of $70, per annum, and that the defendant, had agreed to take the rent in repairs and improvements pn.the premises: and the jury, under the direction of the presiding Judge, found a verdict for plaintiff. A new trial was awarded, however, on the ground of misdirection: and per curiam, “ admitting that the rent was payable in repairs, yet the amount of the rent, and consequently the extent of the repairs, was certain, *501 being- fixed at $70; and the remedy by distress then applied to this ease.”
There is another view of this question. The alternative of the direct contract was, that William Reeves should pay the amount of the judgment, which the defendant, as administrator of Waller, had obtained against him ; and that too, was a contract to pay money, the amount of which was rendered certain by the judgment, being a sum of more, than ten times the amount of the rent reserved: so that whether we adopt the one or the other of the alternatives, here is a sum certain reserved for rent, for which according to the rule a distress would lie.
It is said, however, that that debt was paid by the surrender of the land ; and that therefore nothing was due, and no obligation arose. Now I cannot see how any one, conversant with the circumstances, can mistake that it was the intention of these parties, that if William Reeves should find it convenient to pay the sum, which he had contracted to pay for the land, the amount of which was ascertained by the judgment, the defendant was to let him keep the land, free of the rent reserved by the lease. And as he never did pay, the rent consequently remained due.
2d. The act of 1808 subjects tenants for years, or at will, to a forfeiture of double the value of the use of the premises, to be recovered by action of debt, or by distress, as in cases of rent reserved, who shall, after demand of possession in writing, after the termination of their estates, hold over for the space of three months after such demand. Acts of 1808, p. 38. It is obvious, that the limitation of three months was introduced into the act, only for the purpose of fixing the extent of the wrong done, which should subject the wrong-doer to the penalty. There is clearly no other saving in favor of the tenant, in respect to these three months; nor is there any distinction between that time, and that which is to follow: and the very same reasoning, which would subject him to the penalty in futuro, applies to the time past. If it were otherwise he might violate the act with comparative impunity. According to the act he incurs the penalty, if he holds over one day more than three months; and yet, according to the construction contended for, he would only be liable to the double value of. one day. Such never could have been the iuteution of the Legislature; *502 and nothing in the act, or the nature of the thing, warrants that construction.
3d. At the first view of the rule laid down by the Circuit Court, in relation to the third general question, I was led to conclude, that it was broad enough to subject the property of a stranger, accidentally found on leased premises, to be distrained by the landlord for rent in arrears ; and I was prepared to have entered my protest against it. The general rule in England seems to be, that all goods and chattels, found on the premises, are subject to distress for rent: and this is founded upon the principle, that possession of chattels furnishes such an evidence of property in them, as would induce, a stranger at least, to conclude that they belonged to him who had them ; and that a landlord going to make distress, would not be able to distinguish between those which belonged to the tenant, and those which belonged to a stranger. Many exceptions are however allowed ; as where the lands are not sufficiently fenced to keep out cattle, and those of a stranger stray into the premises, there they are not liable as a distress, until they have been levant et couchant. 2 Bl. Com. 8, And goods placed in appropriate public places of deposit, constitute an exception, covering a very numerous class of cases.
Both the rule, and the exceptions, however, must be understood with reference to the state of things in England, and applied with a due regard to a difference of circumstances in this country, especially in relation to cattle and other live stock. In England, cattle are, for the most part, kept in inclosures, and it is the duty of the owners to prevent their straying; it is his negligence, if he suffer them to stray into the fields of his neighbor, and there to be levant et couchant: but here, the forests are our commons, and our cattle range at large, nor is it a trespass if they enter upon the' uninclosed lands of another. We know too, that when our crops are housed, little attention is paid to keeping up our fences: they are not unfrequeutly thrown open for ihe more convenient ingress and egress of the owner’s own stock, and during that period, our fields become the common of the whole neighbourhood. Knowing this to be the usage of the country, the landlord, when he comes to distrain, does not expect to find his tenant’s cattle unassociated with those of strangers; and it is due to public convenience, and general usage, that he should be required to distinguish between them, for which he has *503 all the facilities which a sheriff going to levy an execution would have. In practice it is not found difficult, and if he act wilfully, and without sufficient caution, it is no hardship if he should be required to answer for it.
The cases under consideration, are, however, of a different character, and reconcile me to the opinion of the Circuit Court. The tenant here was in'possession of the cattle in one case, and of the horse in the other, with the knowledge and consent, of the plaintiffs. They were found upon the premises, where the plaintiffs also lived. The tenant had of them that sort of possession, and use, which indicates ownership; and the landlord had the right to presume they belonged to him. The case then falls directly within the rule, that if they were put on the premises by the consent of the owners,, they are the subject of distress. Cro. Ehz. 549, cited 3 Bl. Com. 8.
It is said that in the case of James R. Reeves, the defendant knew the horse belonged to him, and this brings up the second branch of the third general question. When it is said, that the defendant knew that the horse belonged to James R. Reeves, I understand by it, only that he had a knowledge of those circumstances, from which the right of property in him might be fairly dedueible: but opposed to this, was the actual possession, and use, by his tenant, indicating ownership; and to enable him to determine in whom the legal right was, the judgment of a Court of competent jurisdiction would have been necessary. Without it, he must forego a remedy, which the law gives him against his tenant, or risk the consequences of a trespass, and this, the consequence of the plaintiff’s own act. According to the rule before laid down, he had a right to take it as a distress, and I think with reason. If one will so mix up his own goods, with the goods of the tenant, that the landlord cannot distinguish between them, although he knows they are there, or if he will invest the tenant with the visible indicia of property in them, so as to leave it doubtful to whom they belong, it is due to him as a punishment, and to the landlord as a matter of justice, that the stranger should suffer by it. I am therefore opposed to the motion on all the grounds.
Motion refused.